No. 22-35303

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

VALHALLA CUSTOM HOMES, LLC, an Oregon limited liability company,
Plaintiff-Appellant,

v.

THE CITY OF PORTLAND, an Oregon Municipal Corporation; TED
WHEELER, individually and in his official capacity; CHLOE EUDALY,
individually and in her official capacity; CHRIS WARNER, individually and in his
official capacity; KURT KRUEGER, individually and in his official capacity;
AMANDA OWINGS, in her official capacity; and LEWIS WARDRIP, in his
official capacity,
Defendants-Appellees.

_____

On Appeal from United States District Court
District of Oregon
Case No. 3:21-cv-00225-JR
Hon. Jolie A. Russo, United States Magistrate Judge

_____

**REPLY BRIEF OF APPELLANT**

_____

TIM VOLPERT, P.C.                    HATHAWAY LARSON LLP
Timothy R. Volpert                   Gregory S. Hathaway
3439 SE Hawthorne Blvd, #343         Trinh C. Tran
Portland, OR  97214                  1125 NW Couch St, Ste 550
(503) 703-9054                       Portland, OR 97209
                                     (503) 303-3101

Attorneys for Appellant

i

# TABLE OF CONTENTS

**Page**

A.  Overview ....................................................................................1

B.  Appellees Misstate the State Eligibility Criteria for Permits. ....................2

C.  The Needed Housing Statutes create a legitimate claim of entitlement to permits upon compliance with unambiguous and non-discretionary standards on the face of the City's ordinances. ............5

D.  Defendants unlawfully denied Valhalla's housing development...............9

E.  The Needed Housing Statutes Supersede Incompatible City Ordinances ................................................................................10

F.  City of Portland ordinances that are not clear and objective have no lawful force or effect. ...............................................................11

G.  The District Court Erred in Interpreting PCC 17.28.110.C.1 .................15

H.  The void for vagueness claim should not have been dismissed..............18

I.  The Substantive Due Process claim should not have been dismissed. ................................................................................20

J.  Valhalla was not required to exhaust administrative remedies...............21

K.  The Procedural Due Process claim should not have been dismissed.......22

L.  The Equal Protection claim should not have been dismissed. .................24

M.  Individual Defendants Are Not Entitled To Qualified Immunity ............26

N.  Conclusion ..............................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bateson v. Geisse*,
857 F.2d 1300 (9th Cir. 1988) ...........................................................27

*Board of Regents v. Roth*,
408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).........................7

*Brimstone Nat. Res. Co. v. Haight*,
Case No. 1:18-cv-01740-CL (D. Or. 2020) .........................................22

*City of La Grande v. Public Employees*,
281 Or. 137, 576 P.2d 1204 (1978) ...................................... 10, 11, 15

*City of Sandy v. Metro*,
115 P.3d 960, 200 Or. App. 482 (2005)................................................10

*City of Santa Clara v. Andrus*,
572 F.2d 660 (9th Cir. 1978)..................................................................6

*Clairmont v. Sound Mental Health*,
632 F.3d 1091 (9th Cir. 2011) .............................................................26

*County of Sacramento v. Lewis*,
523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998)................24

*Del Monte Dunes at Monterey, Ltd. v. City of Monterey*,
920 F.2d 1496 (9th Cir. 1990) ...............................................................5

*FCC v. Fox Television*,
567 U.S. 239 (2012)..............................................................................18

*Gerhart v. Lake Cty., Mont.*,
637 F.3d 1013 (9th Cir. 2011) ..........................................................1, 5

*HBA v. City of Eugene*,
41 Or LUBA 370 (2002), LUBA No. 2001-059 & LUBA No. 001-063
(February 28, 2002).................................................................................8

*Home Builders Ass'n of Lane County v. City of Eugene*,
LUBA No. 2001-059, LUBA No. 001-063 (February 28, 2002)....4, 13

*Homebuilders Assn. of Metro v. Metro*,
57 P.3d 204, 184 Or. App. 663 (2002)................................................10

*Hunnicutt v. Meyers*,
    171 P.3d 349, 343 Or. 387 (2007) .......................................................11

*Lee v. City of Portland*,
    57 Or. App. 798, 646 P.2d 662 (1982).................................................3

*Legacy Development Group v. City of the Dalles*,
    LUBA No. 2020-099 (February 24, 2021) .....................................8, 13

*Logan v. Zimmerman*,
    455 U.S. 422 (1982).............................................................................22

*Memphis Light, Gas and Water Division, et al. v. Willie S. Craft et al.*,
    436 U.S. 1, 98 S. Ct. 1554 (1978).....................................................6, 7

*Merritt v. Mackey*,
    827 F.2d 1368 (9th Cir. 1987) ...........................................................22

*Oswego Properties, Inc. v. City of Lake Oswego*,
    108 Or. App. 113 (1991) .......................................................................3

*Parkview Terrace Dev. LLC v. City of Grants Pass*,
    LUBA No. 2014-024 (July 23, 2014) ..................................................13

*Patsy v. Bd. of Regents*,
    457 U.S. 496 (1982).............................................................................22

*Piculell Living Trust v. City of Eugene*,
    LUBA No. 2019-067 (November 11, 2019)..........................................8

*Rogue Valley Association of Realtors v. City of Ashland*,
    LUBA No. 97-260 (Or. LUBA 9/24/1998) ......................... 3, 4, 8, 13

*Se. Neighbors Neighborhood Ass'n v. City of Eugene*,
    LUBA No. 2013-004 (July 12, 2013) ........................................ 4, 8, 23

*Shanks v. Dressell*,
    540 F.3d 1082 (9th Cir. 2008) .............................................................6

*Shinault v. Hawks*,
    776 F.3d 1027 (9th Cir. 2015) ...........................................................27

*State of Oregon v. Illig-Renn*,
    142 P.3d 62, 341 Or. 228 (2006) ........................................................19

*Tirumali v. City of Portland*,
    7 P.3d 761, 169 Or App 241 (2000)....................................................15

*Wolff v. McDonnell*,
    418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)......................24

**Statutes and Ordinances**

42 U.S.C. § 1988 ...............................................................29

DRP 6.03 ................................................................ 2, 13, 26

ORS 197.307(4) ...................................................... passim

ORS 197.646 ....................................................................11

ORS 227.173(2) ................................................... 3, 7, 8, 9

ORS 227.175(4)(b)(A) ......................................... 4, 7, 9, 12

ORS 227.186(2) .................................................................8

PCC 17.04.010 ................................................................18

PCC 17.04.010.J ..............................................................23

PCC 17.06.015 ....................................................... passim

PCC 17.24.005 ................................................................14

PCC 17.24.016 ......................................................... 14, 15

PCC 17.24.040 ......................................................... 14, 15

PCC 17.28.110 ........................................................ passim

PCC 17.28.110.C.1 ................................................ 12, 15, 16

PCC 17.28.110.C.5 ..........................................................15

PCC 24.10.070.D .............................................................14

PCC 33.218.010 ..............................................................25

PCC 33.218.110.H.5 ........................................................24

PCC Chapter 17.88 ..........................................................14

PCC Title 17.......................................................... passim

**Constitutional Provisions**

U.S. Const. amend. XIV ......................................................7

**Other Authorities**

*Black's Law Dictionary* (Sixth Edition 1991) ....................8, 19

*Webster's Unabridged Dictionary* (Second Edition 2001) .................4, 16

1

## A.    Overview

The City's brief reads like a logical, well thought-out and persuasive statement of public policy.  Even though the City, applying clear and objective standards, approved Valhalla's Building and Driveway Design employing a driveway for each distinct lot, the PBOT Director discretionarily concluded that limiting Valhalla's development to one driveway would allow for more on street parking.

All of that would be fine if the City was allowed to deny permits for needed housing based on discretion.  But the City is not allowed to exercise such discretion.  The State of Oregon's Needed Housing Statutes ("Needed Housing Statutes") forbid it.  And the Needed Housing Statutes create a legitimate claim of entitlement, triggering the protections of the Due Process Clause of the Fourteenth Amendment, when as here, state law "imposes significant limitations on the discretion of the decision maker."  *Gerhart v. Lake Cty., Mont*., 637 F.3d 1013, 1021 (9th Cir. 2011).

The City of Portland employs highly sophisticated land use personnel and extremely able attorneys.  Those individuals know that the City's ordinances governing needed housing permits violate state law.  But the City refuses to comply, necessitating frivolous arguments made in the answering brief misrepresenting the standards imposed by the Needed Housing Statutes and

2

ignoring the requirement that the decision whether to permit needed housing cannot be made based on discretion.   Indeed, the City blithely explains its discretionary decisions resulting in denial of the permit.[1]   As explained below, the City's arguments are based on made up law and collapse when considered in light of the governing statutes.

**B.    Appellees Misstate the State Eligibility Criteria for Permits.**

The City of Portland is knowingly disregarding the obligations imposed by the Needed Housing Statutes to adopt and apply only clear and objective standards, conditions and procedures, and requiring approval when an application complies with those standards and conditions.   The most recent example of the City's recalcitrance is found in the arguments presented in its answering brief.   Perhaps the most egregious example is the City's assertion that, under the Needed Housing Statutes, "adopted standards need only be 'clear enough for an applicant to know what he must show during the application process.'"  Appellee br., 26, 42.   As the

---

[1] The City admitted in the district court and admits in its brief that the Director's decisions are discretionary.  ER-95, 102-03; Defendants' Reply, pp. 2, 8, 14; Docket # 44; Defendants' Response to Objections, pp. 3, 18, Docket # 63; Appellees' Answering Brief, pp. 22, 30).

Referring to Development Review Policy 6.03, the City has also admitted that the definition of "clear and objective" does not include "discretion."  The City represented in a letter to Valhalla's attorney, which the City also entered in the record in a DLCD proceeding:  "The written policy [DRP 6.03] provides staff with consistent and clear direction when discretionary review is involved rather than the clear and objective standard . . .."  June 8, 2018, letter, Ex. 5, Declaration of Lauren King supporting Motion to Dismiss., Docket # 27.

City knows, that standard has never governed development subject to the Needed Housing Statutes. The cases defendants cite, *Oswego Properties, Inc. v. City of Lake Oswego*, 108 Or. App. 113 (1991) and *Lee v. City of Portland*, 57 Or. App. 798, 646 P.2d 662 (1982), have absolutely no connection to the Needed Housing Statutes and do not discuss what "clear and objective" means as used in those statutes. In fact, Oregon's Land Use Board of Appeals ("LUBA") cites *Oswego Properties* and *Lee* as examples of the standards that apply when land use development is **not** subject to the requirement for clear and objective standards.

> Absent a statutory or rule requirement that land use standards be clear and objective, land use standards can be, and frequently are, unclear, subjective and highly discretionary. <u>See, e.g. Oswego Properties, Inc. v. City of Lake Oswego, 108 Or App 113, 814 P2d 539 (1991); Lee v. City of Portland, 57 Or App 798, 802, 646 P2d 662 (1982)</u>;"

*Rogue Valley Association of Realtors v. City of Ashland*, LUBA No. 97-260 (Or. LUBA 9/24/1998), n.22.

The days when needed housing could be subjected to "unclear, subjective and highly discretionary" standards are long gone. The <u>Needed Housing Statutes were truly a "game changer.</u>" ORS 197.307(4) <u>requires</u> that, "a local government may adopt and apply only clear and objective standards, conditions and procedures regulating the development of housing, including needed housing." ORS 227.173(2) provides that when clear and objective standards are required, "the

4

standards must be clear and objective on the face of the ordinance." ORS 227.175(4)(b)(A) provides that, "A city may not deny an application for a housing development located within the urban growth boundary if the development complies with clear and objective standards." The addition of the "objective" requirement is particularly significant. "Objective" means "not influenced by personal feelings, interpretations, or prejudice; based on facts; unbiased" and "intent upon or dealing with things external to the mind rather than thoughts or feelings."[2] That requires that standards, conditions and procedures cannot be subject to individual interpretation.[3] The Needed Housing Statutes thus, "protects an applicant for a permit for needed housing from the city's imposition of discretionary standards without its agreement, . . .." *Se. Neighbors Neighborhood Ass'n v. City of Eugene*, LUBA No. 2013-004 (July 12, 2013), p 22.[4]

---

[2] *Webster's Unabridged Dictionary* (Second Edition 2001).

[3] The goal of the presently applicable statutes is to define and limit the eligibility criteria local governments may use and to mandate when local governments must approve applications for housing development. *See*, *Rogue Valley Association of Realtors v. City of Ashland*, LUBA No. 97-260 (Or. LUBA 9/24/1998) at pp. 19-21 (discussing legislative history).

[4] *Rogue Valley v. City of Ashland*, LUBA No. 97-260 (September 24, 1998) at pp. 16-23 (holding that discretionary and subjective criteria do not qualify as clear and objective); *Home Builders Ass'n of Lane County v. City of Eugene*, LUBA No. 2001-059, LUBA No. 001-063 (February 28, 2002) at p. 48 (discretionary approval track allowed provided applicant retains option of proceeding under clear and objective standards).

The ease with which defendant convinced the district court that the Needed Housing Statutes do not mean what they say supports this Court's instruction that, in cases where property owners contend governmental regulation has resulted in an unconstitutional deprivation of property, "motions to dismiss and motions for summary judgment must be viewed with particular skepticism." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990) ("The importance of the specific facts and circumstances relating to the property and the facts and circumstances relating to the governmental action militate against summary resolution in most cases.") *Id*.

**C.     The Needed Housing Statutes create a legitimate claim of entitlement to permits upon compliance with unambiguous and non-discretionary standards on the face of the City's ordinances.**

The City claims that Valhalla does not have a legitimate claim of entitlement to permits. Appellee Br. 36-54. This Court explained in *Gerhart v. Lake Cty., Mont*., 637 F.3d 1013, 1021 (9th Cir. 2011), "we have held that state law creates a 'legitimate claim of entitlement' when it 'imposes significant limitations on the discretion of the decision maker.' *Braswell*, 622 F.3d at 1102." The Court provided examples of property rights in the context of building permits:

> For example, we have held that such an entitlement to a government permit exists when a state law or regulation requires that the permit be issued once certain requirements are satisfied. *See, e.g., Groten*, 251 F.3d at 850 (holding that a protected property right to a license existed where both federal and state law entitled the

> applicant to a license whenever certain statutory requirements were met); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) (holding that a builder had a property interest in a building permit where city regulations provided that once an applicant met certain requirements, a permit must be issued).

*See City of Santa* Clara *v. Andrus*, 572 F.2d 660, 676 (9th Cir. 1978)("[A] statute will create an entitlement to a governmental benefit either if the statute sets out conditions under which the benefit must be granted or if the statute sets out the only conditions under which the benefit may be denied."); *Shanks v. Dressell*, 540 F.3d 1082, 1091 (9th Cir. 2008) ("Only if the governing statute compels a result 'upon compliance with certain criteria, none of which involves the exercise of discretion by the governing body,' does it create a constitutionally protected property interest.")

> The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause. Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause.

*Memphis Light, Gas and Water Division, et al. v. Willie S. Craft et al.*, 436 U.S. 1, 9, 98 S. Ct. 1554 (1978).

*Memphis Light* recognized a legitimate claim of entitlement to a governmental benefit as a property right protected by the due process clause of the

7

14th Amendment. *Id* at 11-12. Entitlement is "grounded in the statute defining eligibility for [the benefit]." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

Federal law directs that one must look to the law defining eligibility for a governmental benefit to determine if there is a "legitimate claim of entitlement" to the benefit. Where, as here, the statute or law defining eligibility for the benefit sets out conditions under which the benefit must be granted or sets out the only conditions under which the benefit may be denied, it creates a legitimate claim of entitlement to the benefit.

ORS 197.307(4), ORS 227.173(2) and ORS 227.175(4)(b)(A) define the eligibility for development permits for Needed Housing. Those statutes set out conditions under which permits must be granted and set out the only conditions under which permits may be denied. The Needed Housing Statutes compel conferral of the permits upon compliance with certain criteria in city ordinances, none of which involves the exercise of discretion by the governing body.

A legitimate claim of entitlement exists when an application meets clear and objective standards. The statutes create this entitlement by:

1.  Limiting the standards, conditions and procedures that may be adopted and applied by local governments to **only** those which are "clear and objective." Oregon law defines "clear and objective" as

standards, conditions and procedures which are not discretionary, are "unambiguous," for which there is "certainty of application" and which exist "independent of mind." Oregon law holds that if interpretation or discretion is required or allowed by the local ordinance, the definition of "clear and objective" is not met and the standard, condition or procedure cannot be used. Discretion, by definition, cannot exist independent of mind.[5]

2. Prohibiting local governments from applying any standards which have not been legislatively adopted into their ordinances and which are not clear and objective on the face of those ordinances. When nothing in an ordinance "references or identifies" standards that will be applied, the ordinance does not "clearly incorporate" those standards and the ordinance "is not clear and objective" and cannot be used.[6]

---

[5] ORS 197.307(4); *Se. Neighbors Neighborhood Ass'n v. City of Eugene*, LUBA No. 2013-004 (July 12, 2013)*; Rogue Valley v. City of Ashland*, LUBA No. 97-260 (September 24, 1998); *HBA v. City of Eugene*, 41 Or LUBA 370 (2002), LUBA No. 2001-059 & LUBA No. 001-063 (February 28, 2002); *Piculell Living Trust v. City of Eugene*, LUBA No. 2019-067 (November 11, 2019); "When applied to public functionaries, discretion means a power or right conferred upon them by law of acting officially in certain circumstances, according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others." *Black's Law Dictionary* (Sixth Edition 1991).

[6] ORS 227.186(2), ORS 227.173(2), *Legacy Development Group v. City of the Dalles*, LUBA No. 2020-099 (February 24, 2021) p. 14.

3.      Plainly stating, "A city may not deny an application for a housing development located within the urban growth boundary if the development complies with clear and objective standards, . . ." *ORS 227.175(4)(b)(A)*.

The Needed Housing Statutes create – upon compliance with clear and objective standards – a legitimate claim of entitlement to development approval and permits.

## D.      Defendants unlawfully denied Valhalla's housing development.

As alleged in Paragraph 5 of the Amended Complaint:

> Plaintiff met the apparent clear and objective standards of PCC 17.28.110 which entitled Plaintiff to a separate driveway for each of its discrete Legal Lots of Record consistent with the City's lot confirmation ("Lot Confirmation") for both Legal Lots of Record and the City approved Building and Driveway Design.  ORS 197.307(4) and ORS 227.173(2) required the City to approve Plaintiff's Attached Housing Development subject only to clear and objective standards on the face of the City's ordinances.

Because Title 17 contained no clear and objective standards, its provisions could not be used to deny Valhalla's housing development.  Valhalla complied with the unambiguous and non-discretionary standards in the City's code.  That is all it needed to do.  Pursuant to state law, the City was not allowed to deny the requested permits.  Pursuant to federal law, denial was a violation of substantive due process.

**E.     The Needed Housing Statutes Supersede Incompatible City Ordinances**

Defendants' arguments turn the law on its head by focusing on how much discretion Title 17 gives to the Director.  But, the fact that PCC 17.28.110 grants the Director discretion in issuing residential driveway permits means that PCC 17.28.110 is incompatible with controlling state law.  Oregon law limits the authority of local governments and state land use law supersedes incompatible local ordinances.

> [A] general law addressed primarily to substantive social, economic or other regulatory objectives of the state prevails over contrary policies preferred by some local governments.

*City of La Grande v. Public Employees*, 281 Or. 137, 576 P.2d 1204, 1211 (1978).

> Under the Oregon Constitution, the Legislative Assembly has plenary authority to supersede home rule cities in matters of 'substantive social, economic, or other regulatory policy.'  Id.  The state's authority to impose land use regulations cannot be disputed, even when those regulations run counter to the preferences of cities or counties.

*City of Sandy v. Metro*, 115 P.3d 960, 968-69, 200 Or. App. 482 (2005).

> It is "a fundamental and well-established principle of law in Oregon that land use law is governed by statutes. . . . [l]and use planning and regulation in Oregon occurs within a framework enacted in 1973 as Senate Bill 100 which, with some amendments, now appears as ORS ch. 197."

*Homebuilders Assn. of Metro v. Metro*, 57 P.3d 204, 207, 184 Or. App. 663 (2002).

> "[L]ocal government planning laws must comply with
> state land use planning laws."

*Hunnicutt v. Meyers*, 171 P.3d 349, 343 Or. 387, 392 (2007).

Cities cannot lawfully require compliance with discretionary standards, conditions or procedures on applications for housing development, even if they write their ordinances to do so.[7] Such ordinances are preempted by the state statutes and have no lawful force or effect.

## F. City of Portland ordinances that are not clear and objective have no lawful force or effect.

Discretion is the City's "Achilles heel." Because the City determined that no approvals under Title 17 would be granted as of right, thereby maintaining discretion to deny any permit request, Title 17 is incompatible with controlling state law and therefore without lawful force or effect with respect to housing development. *City of La Grande* at 1211.

As explained above, the Needed Housing Statutes forbid discretionary denials, yet PCC 17.06.015 provides that "No provision of this Title shall be construed to create a right in any individual to a permit which *in the opinion of the City* would be inconsistent with the public interest." (emphasis added). The Needed Housing Statutes forbid denial of permits based on "the opinion" of

---

[7] Failure to amend local land use ordinances to comply with state requirements means that the state "requirements apply directly to the local government's land use decisions." ORS 197.646.

anyone. But in the City of Portland, all applications for housing development must comply with whatever conditions, in the Director's opinion, are necessary to mitigate the development's impact on the public right-of-way.

The City concedes that, "a driveway across the City's right-of-way is not allowed as a matter of right. Upon application, PBOT may issue a driveway . . .." ER 228-29. The Needed Housing Statutes require that when clear and objective standards are met, the permit must be granted as a matter of right. ORS 227.175(4)(b)(A). Nothing in Title 17 is clear and objective because no permits are granted as of right.

The standards in PCC 17.28.110 do not meet the definition of "clear and objective" in numerous other ways:

1. PCC 17.28.110 does not contain any mandatory approval standards. *Group B* at p. 17. Defendants admit that PCC 17.28.110.C.1 did not *require* the Director to require a shared driveway. (Appellee br., p. 47.)

2. PCC 17.28.110 is designed to balance or mitigate impacts of the development. "'Needed housing' is not to be subjected to standards, conditions or procedures that involve subjective, value-laden analyses that are designed to balance or mitigate impacts of the development on (1) the property to be developed or (2) the adjoining properties or community. Such standards, conditions or

procedures are not clear and objective . . ." *Rogue Valley v. City of Ashland*, LUBA No. 97-260 (September 24, 1998), p. 21.

3.      PCC 17.28.110 imposes standards that are not referenced or identified on the face of the ordinance. *Legacy Development Group*, p. 14. The shared driveway requirement depends upon whether the proposed housing is attached or detached. That fact is not stated on the face of the ordinance, nor is DRP 6.03 referenced or identified on the face of the ordinance.

4.      PCC 17.28.110 grants the city "discretion to restrict the location of buildings." *Home Builders* at p. 43. The Director required an additional six feet of setback to Valhalla's building.

5.      PCC 17.28.110 employs undefined key terms. *Parkview Terrace Dev. LLC v. City of Grants Pass*, LUBA No. 2014-024 (July 23, 2014) at p. 17. There is no definition in PCC 17.28.110 or any other ordinance which defines what "preserve on-street parking" requires (length, location, number or circumstances under which it must be preserved). Nothing on the face of PCC 17.28.110 references or identifies standards that provide a definition.

6.      PCC 17.28.110 provides "no objective way to determine" from the face of the ordinance what is required for approval. *Home Builders* at pp. 25-26. There can be no objective way to determine what the Director will subjectively decide is "inconsistent with the public interest," or "suitable in the circumstances,"

or "in the interest of the City," or what "the public need requires," or is "necessary."

The language in PCC 17.28.110, PCC 17.06.015, PCC 17.24.040, PCC 17.24.016 and PCC 17.24.005 provides that all permit decisions are subject to the Director's opinion and judgment. As the City's legal counsel has stated, "the Code provides staff discretion." ER-184. And as city staff have confirmed, the Director's decisions are discretionary. *Id*.

For a developer of needed housing, there is no path that escapes discretionary review. The City will not issue a building permit unless, in the Director's judgment, the impact to the right-of-way is acceptable. PCC 24.10.070.D (requiring compliance with PCC Chapter 17.88 (Street Access)). PCC 17.88 requires compliance with numerous discretionary provisions, *e.g.* "as required by the Director," "as designated by the Director," "as directed by the Director," "the Director may allow," and "the Director may establish rules."

The City will not issue a building permit that complies with clear and objective on-site parking standards without the Director's discretionary approval of a driveway permit. For all of the foregoing reasons, PCC Title 17, PCC 17.28.110, PCC Chapter 17.88 and PCC 24.10.070.D are not clear and objective and are therefore incompatible with the Needed Housing Statutes. A land use regulation

that is incompatible with state land use regulations has no force or effect of law. *City of La Grande* at 1211.

## G.    The District Court Erred in Interpreting PCC 17.28.110.C.1

Valhalla believes the Driveway Ordinance, PCC 17.28.110, unambiguously allows it to utilize one driveway for each of its two adjoining lots.  If, however, the terms of the City's Needed Housing Ordinances can plausibly be interpreted in more than one way, those ordinances are ambiguous and therefore not "clear and objective.'" *Tirumali v. City of Portland*, 7 P.3d 761, 765, 169 Or App 241 (2000). The City misled the district court in arguing that PCC 17.28.110.C.1 cannot plausibly be interpreted as anything but a requirement that the two individual Sumner Properties be viewed as having one combined frontage and limited to a shared driveway.

Valhalla will address briefly the interpretation of the ordinance.  It is important to recognize, however, that whatever that provision means is a red herring because other provisions of Title 17 vest *complete discretion* in the Director to *ignore* whatever the Driveway Ordinance says.  *See*, PCC 17.06.015, PCC 17.24.040, PCC 17.24.016, and PCC 17.28.110.C.5.  Whatever PCC 17.28.110.C.1 was intended to mean, no developer can count on it as providing a standard that, if met, must result in a permit.

As for the meaning of PCC 17.28.110.C.1, the language at issue is: "Each 100 feet of frontage, or fraction thereof, under single ownership shall, for purposes of this Chapter, be considered a separate frontage." The dictionary defines "*each*" as meaning, "every one of two or more considered individually or one by one."[8] "*Separate*" is defined as, "detached, disconnected or disjoined" and "unconnected, distinct, unique and "not shared."[9]

Thus, in the phrase "Each 100 feet of frontage, or fraction thereof, under single ownership," lots with "100 feet of frontage under single ownership" and lots with a "fraction thereof under single ownership" are to be "considered individually or one by one." And a "separate frontage" is not a "shared" frontage but a "detached, disconnected or disjoined" frontage. Plaintiff owned two lots. Each lot had 25 feet of frontage, *i.e.,* a fraction of 100 feet of frontage. Thus, for purposes of Title 17, each of plaintiff's lots must "be considered a separate frontage," entitled to a separate driveway. The district court erred when it determined as a matter of law, that the only plausible meaning was to gather together existing frontages and combine them into one.

Defendants cite a Department of Land Conservation and Development ("DLCD") staff memorandum as evidence that PCC 17.28.110 is clear and

---

[8] *Webster's Unabridged Dictionary* (Second Edition 2001).

[9] *Webster's Unabridged Dictionary* (Second Edition 2001).

objective.  ER 213, Appellee br. 26-27.  A staff recommendation, of course, is not precedent.  More importantly, however, this DLCD determination the City references actually supports Valhalla's interpretation of the Driveway Ordinance.

The DLCD memorandum (which of course is not binding precedent) addressed a different Valhalla development involving a request for two driveways for attached housing on *one lot* -- not two distinct lots as in this case.  The DLCD's only conclusion was that, "Valhalla has not established that the development regulations in PCC 17.28.110, as they apply to Valhalla's proposed development, are not clear and objective and do not comply with ORS 197.307(4)."  In other words, DCLD concluded that the Driveway Ordinance clearly and objectively allows one driveway per lot.  The City now claims that the Driveway Ordinance allows Valhalla only *one* driveway for its *two* lots.

DLCD staff was not made aware in the matter at issue previously of PCC 17.06.015 and the City's official position that driveway permits are not granted as of right.  It is likely that DLCD staff was of the misimpression that the City complied with state law and had a driveway ordinance which entitled each property to one driveway as a matter of right.  The issue presented there did not involve the meaning of the words "each," separate," or frontage,' at issue here.

**H.    The void for vagueness claim should not have been dismissed.**

Title 17 and PCC 17.28.110 are void for vagueness.  In their vagueness argument, defendants refer repeatedly to PCC 17.04.010.  Appellee br. 24, 25 and 28.  Valhalla will assume that this is in error and that defendants mean to refer to 17.28.110.

In *FCC v. Fox Television*, 567 U.S. 239, 253 (2012), the Court explained:

> [T]he void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.

Defendants claim that PCC 17.28.110 "cabined" the Director's discretion, but point to no provision that announces the Director's authority to impose setback, site design, and building design requirements.  Appellee br. 30.  The PBOT Director overrode another bureau's mandatory approval standards regulating these on-site features, without an explicit grant of that authority.  PCC 17.28.110 thus does not sufficiently cabin the Director's discretion.

By failing to provide the necessary precision and guidance, Title 17 and PCC 17.28.110 allowed the Director to refuse to allow development which, by law, the City could not deny.  Governmental action is arbitrary when it is "without

cause based upon the law."[10]  Title 17 and PCC 17.28.110 explicitly authorized the Director to violate state law by allowing for discretionary decisions on driveway permits for housing.  An ordinance that encourages unlawful decision making is an ordinance that allows for arbitrary enforcement.

Defendants' argument ignores PCC 17.06.015, which provides that "No provision of this Title shall be construed to create a right in any individual to a permit which in the opinion of the City would be inconsistent with the public interest."  That is, taking into account every standard, factor, goal and concern described in PCC 17.28.110 and satisfying it does not entitle one to a permit if the City (pursuant to City code, the Director) determines some other reason – not addressed by PCC 17.28.110 – makes granting the permit "inconsistent with the public interest."

> For due process purposes, a statute is vague . . . if it either contains no identifiable standard, *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983), or employs a standard that relies on the shifting and subjective judgments of the persons who are charged with enforcing it, *City of Chicago v. Morales*, 527 U.S. 41, 62, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999).

*State of Oregon v. Illig-Renn*, 142 P.3d 62, 70, 341 Or. 228 (2006).

One cannot know what is required to obtain a driveway permit, or what building site or driveway configuration will be allowed, by reading PCC 17.28.110

---

[10] *Black's Law Dictionary* (Sixth Edition, 1991).

or any other provision in the City's code.  Under this regulatory scheme, *knowing the Director well* is more important than *knowing what the code says*.

Valhalla does not argue that the constitutional standard for vagueness is "clear and objective standards."  Rather, it claims that an ordinance authorizing arbitrary conduct is void for vagueness and, because it is incompatible with superior state law (the Needed Housing Statutes) and therefore void, it is *not law.* Without any legal force or effect, PCC 17.28.110 and Title 17 cannot inform regulated parties of what is required of them so they may act accordingly.  Nor can a void ordinance confer authority to act.

## I.     The Substantive Due Process claim should not have been dismissed.

Defendants make two arguments for dismissal of the substantive due process claim.  The first argument harkens back to the false assertion that ORS 197.307(4) merely requires that laws affecting property development need only be "clear enough for an applicant to know what he must show during the application process." Appellee br. 26, 42.  As explained above, that standard does not apply here.  Defendants' second argument is that Valhalla has no legitimate claim of entitlement to permits.   Appellee br. 41-43.  That is also wrong, as described above.

The City repeats the mantra, which it employed successfully in the district court, that there is no fundamental, constitutional right to on-site parking or the

driveway design of its choice.  Appellee br. 28.  As the City is well aware, plaintiff does not claim such a right.  Plaintiff claims (1) a right to be informed, by clear and objective language in an ordinance, precisely what it would take to obtain permits for a needed housing development, and (2) the right to permits if the clear and objective standards on the face of the ordinances are met.

No ordinance provides either.  The PBOT Director has an unlawful discretionary veto over approval of housing projects.  PCC 17.06.015 states: "No provision of this Title shall be construed to create a right in any individual to a permit which in the opinion of the City would be inconsistent with the public interest."  Violation of state and federal law is per se arbitrary and unreasonable. *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988) (The council members acted arbitrarily by denying Bateson's permit when they had no authority to withhold it.  At the time they acted, the law was established sufficiently to make their conduct unreasonable.).

**J.    Valhalla was not required to exhaust administrative remedies.**

Defendants suggest that Valhalla was required to exhaust administrative remedies.  The district court erred by holding that failure to use the writ of review process or seek relief from Land Use Board of Appeals ("LUBA") could preclude a procedural due process claim.  "Exhaustion of state judicial or administrative remedies is not required for claims alleged under section 1983." *Brimstone Nat.*

22

*Res. Co. v. Haight*, Case No. 1:18-cv-01740-CL (D. Or. 2020), *citing Patsy v. Bd. of Regents*, 457 U.S. 496, 500 (1982).

## K.    The Procedural Due Process claim should not have been dismissed.

In *Merritt v. Mackey*, 827 F.2d 1368, 1372 (9th Cir. 1987), the Court held:

> "[T]he state must provide a predeprivation process where the acts complained of are 'deliberate, considered, planned or prescribed conduct . . . whether or not such conduct is authorized.'" . . . "Postdeprivation remedies satisfy due process only when the conduct at issue was both unauthorized and random."

Defendants' claim that the City did not fail to provide due process because there was an opportunity, post-deprivation, to appeal in state court or to a state agency is contrary to law. Appellee br. 46-53. When it is "established [City] procedure" that destroys a property interest without according proper procedural safeguards and absent "the necessity of quick action by the [City] or the impracticality of providing any predeprivation process," a post-deprivation process is "constitutionally inadequate." (Internal citations omitted.) *Logan v. Zimmerman*, 455 U.S. 422, 436 (1982).

Defendants assert that, even though Appellant used the only City process available to it, it did not avail itself of due process because it crossed out the portions of the "Driveway Design Exception Request Form" asking for "more than one driveway per frontage" or for a waiver of the "requirement for shared driveway." Appellee br. 5. In other words, defendants claim that Valhalla did not

23

ask for a discretionary decision. But under Oregon law, the City could not require that Valhalla ask for a discretionary decision. *See Se. Neighbors Neighborhood Ass'n v. City of Eugene*, LUBA No. 2013-004 (July 12, 2013) at p. 22. Valhalla had a legitimate claim of entitlement to permits for development that complied with clear and objective standards.

There is no authority for the proposition that one who has a legitimate claim of entitlement to a governmental benefit must first concede no entitlement to the benefit and then have been denied in order to have a procedural due process claim under Section 1983.

The only process afforded to Valhalla was the opportunity to submit a written request asking the Director (defined as the Director, "or the lawfully designated subordinate of the Director acting under the orders of the Director" PCC 17.04.010.J) to reconsider the decision (made by another subordinate of the Director) to apply the Director's policy. Valhalla did so. Defendants describe this as a quasi-judicial process. However, defendant Owings was a subordinate of the Director acting under the orders of the Director. As such she could not be an impartial or neutral decision maker as to the question of whether her supervisor's policy should be waived.

Finally, in an argument that defendants did not make below, they claim that while there is no appeal to a driveway design exception, Valhalla could have

24

appealed in some other, unexplained manner.  Appellee br. 52-54.  But the City's regulations do not just prohibit appeal of "design exceptions."  They prohibit appeal of decisions about the number of driveways.  The City's Instructions on Public Works Appeal Request Form provides as "examples of requirements not subject to a Public Works Administrative Appeal," number of driveways, driveway location or width . . .."

"[T]he touchstone of due process is protection of the individual against arbitrary action of government." [11]  Defendants provided no meaningful pre-deprivation process.

## L.  The Equal Protection claim should not have been dismissed.

Valhalla had a legitimate claim of entitlement to the development permits it sought and no clear and objective standard in Title 17 provided that the requirements to obtain a driveway permit differed based on whether housing was attached or detached.

Title 33 allowed each Sumner Property to have its own driveway regardless of whether the housing was attached or detached.  In addition, contrary to defendants' claim at p. 67 of its brief, PCC 33.218.110.H.5 specifically *entitled* attached housing to have one driveway per unit (regardless of property lines) so

---

[11] *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).

25

long as the individual driveways were 18 feet apart. Valhalla's requested driveways were 18 feet apart. "If the applicant chooses to meet the objective standards of this chapter, no discretionary review process is required." *PCC 33.218.010 Purpose.* Compliance with clear and objective standards entitled Valhalla to approval.

Both Valhalla and the subsequent owner of the Sumner Properties had a legitimate claim of entitlement to the permits they sought. Valhalla's housing development was denied on the basis that its design required two separate driveways. The subsequent owner's housing development was approved even though its design also required two separate driveways.

Defendants argue that Valhalla needed to allege "that the subsequent purchaser . . . also declined to follow the process for requesting two separate driveway permits but was still granted the permits" in order to show that "it was 'in all relevant respects alike' to that subsequent purchaser." Appellee br. 59-60. As Defendants admit, detached housing projects on separate lots are not required to share a driveway. The only process such projects must follow is the same process Valhalla initially followed when it first submitted its application. An application for detached housing does not trigger the second step that Valhalla took and which defendants claim was deficient.

There can be no rational basis for denying permits when one has a legitimate claim of entitlement to them. There can be no rational basis for regulating according to law for one owner and not for another.

## M.  Individual Defendants Are Not Entitled To Qualified Immunity

Defendants argue: "In this case, no reasonable government official would have known that applying PCC 17.28.110 and DRP 6.03 to deny plaintiff's request for two driveways would have violated any federal constitutional right of plaintiff's. Certainly, the purported unconstitutionality of such a denial was not "beyond debate." Appellee br. 69. As is demonstrated in Valhalla's opening brief and above, it is clearly established law that denial of a permit when one has a legitimate claim of entitlement to it violates substantive due process.

> Whether the law was clearly established is an objective standard; the defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant.

*Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011).

It is clearly established law that defendants had no authority to require applicants for needed housing to comply with discretionary standards, conditions or procedures. It is clearly established federal law that a builder has a property interest in a building permit.

> Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly

established' at the time of the challenged conduct. *Ashcroft v. al-Kidd*, — U.S. ----, 131 S. Ct. 2074 2080, 179 L. Ed. 2d 1149 (2011) [citations omitted]. In order to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

*Shinault v. Hawks*, 776 F.3d 1027, 1032-33 (9th Cir. 2015).

The situation here, in essence, is the same as that this Court addressed in

*Bateson v. Geisse*, 857 F.2d 1300, 1304-05 (9th Cir. 1988). This Court held:

> We conclude that the city council members' actions were not objectively reasonable and preclude their use of qualified immunity against this suit. By 1984 when the council members decided to withhold Bateson's permit, this court had made clear that a statutory scheme which placed "significant substantive restrictions" on the decision to grant a permit or license would be sufficient to confer due process rights.
>
> . . .
>
> The council members acted arbitrarily by denying Bateson's permit when they had no authority to withhold it. At the time they acted, the law was established sufficiently to make their conduct unreasonable. It was established so well, in fact, that City Attorney Tillotson warned them that if they acted to deny the building permit or to initiate rezoning to make the proposed project improper or illegal, there was a substantial probability that a court would overturn that action and hold them liable for the resulting damages due to the project's delay. The council members ignored clearly established law and their attorney's advice. They are not shielded from personal liability.

The individual defendants here are not entitled to qualified immunity.

Case: 22-35303, 01/12/2023, ID: 12629850, DktEntry: 29, Page 33 of 35

## N.      Conclusion

The City is playing a game of "hide the ball" from the courts.  That is clear from the arguments in its answering brief, resting on assertions the City must know are false -- all in order to continue violating the Needed Housing Statutes. Building discretion into housing ordinances and exercising such discretion arbitrarily in the permitting process imposes a very real burden on developers of needed housing and discourages such development in Oregon's largest city.  In this case, Valhalla invested real money in a development and obtained authority for its plan, only to be told that the PBOT Director had exercised a veto based not on law, but upon his own, personal opinions.  This kind of arbitrary governing by a local government is exactly what the Needed Housing Statues were designed to prevent.

It was error for the district court to conclude that the City allows each private property frontage one driveway as a matter of right.  (F&R, p.10).  It was error for the district court to conclude that the City complied with the Needed Housing Statutes.  It was error for the district court to conclude that the Needed Housing Statutes did not prohibit discretionary decision making.  It was error for the district court to conclude that meeting the non-discretionary standards in the City's ordinances did not create a legitimate claim of entitlement to the permits Valhalla sought.  The judgment of the district court should be reversed.  Valhalla

29

requests that it be awarded its reasonable costs, disbursements and attorney fees incurred herein pursuant to 42 U.S.C. § 1988.

Dated this 12th day of January, 2023.

TIM VOLPERT, P.C.


 s/ Timothy R. Volpert
Timothy R. Volpert
3439 SE Hawthorne Blvd, #343
Portland, OR  97214
(503) 703-9054

HATHAWAY LARSON LLP
Gregory S. Hathaway
Trinh C. Tran
1125 NW Couch St, Ste 550
Portland, OR 97209
(503) 303-3101

Attorneys for Appellant

## Certificate of Compliance for Briefs

I am the attorney or self-represented party.

**This brief contains 6,617 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


s/ Timothy R. Volpert           Date:  January 12, 2023